* HIRAM SMITH and Others, Respondents, v. THE CITY OF ROCHESTEF, Appellant.

*Wrongful diversion of the waters of a stream — may be restrained by a riparian owner, although he sustains no actual damages thereby.*

This action was brought by the plaintiffs, the owners of mills upon a creek, to restrain the defendant from wrongfully diverting the waters of Hemlock lake, which formerly flowed into the said creek. It was conceded by the plaintiffs that the defendant had taken steps by means of which it was, and would be, enabled to procure, from another lake, sufficient water to furnish a more uniform and constant supply to the plaintiffs' mills than had existed before the defendant commenced to divert the waters from Hemlock lake, and that the plaintiffs had not suffered any damage by the interference of the defendant with the waters of the latter lake.

*Held,* that as the defendant had no legal right to divert the waters of Hemlock lake, and so diminish the plaintiffs' supply of water from that source, the plaintiffs were entitled to an injunction restraining such diversion, even though it occasioned no actual damages to them. (Haight, J., dissenting.)

Appeal from a judgment, entered upon the decision of the Special Term of Ontario county.

The plaintiffs are owners or lessees of mills and manufactories situate upon Honeoye creek, below its junction with the outlet of Hemlock and Canadice lakes. The defendant is a municipal corporation, and in pursuance of an act of the legislature, entitled " An act to supply the city of Rochester with pure and wholesome water," passed April 27, 1872, and the amendments thereto, have constructed and laid an iron pipe three feet in diameter, extending from Hemlock lake to the city of Rochester, for the purpose of conveying through the same the waters of the lake to the city, and thus supply the residents thereof. For the year past the defendant has diverted from the waters of the lake, through the pipe, 4,500,000 gallons daily.

This action was brought to restrain such diversion of the waters of the lake. Upon the first trial the court, at first instance, followed by the General Term, dismissed the complaint upon the ground that the plaintiffs had not, so far as the waters issuing from Hemlock lake were concerned, the ordinary rights of riparian owners.

* Decided July, 1885.

This view and the judgment based upon it, were disapproved by the Court of Appeals and the action was remanded for further proceedings. Upon the second trial the facts were agreed upon and, so far as they are necessary to be considered upon this appeal, are as follows : " That at all seasons of the year, except during the dry weather in the summer and fall, the water flowing down Honeoye creek was sufficient for use in propelling the mills and machinery .of the plaintiffs, and except during such dry weather such use was not affected by the amount of water diverted by the defendant from Hemlock lake. That before such diversion by the defendant the waters flowing in said creek during the dry portion of the season furnished but a scant supply for said mills and machinery of the plaintiffs, and when said mills and machinery lay still over Sunday those lower down on the stream were compelled to delay starting until those above were in operation and the water therefrom was allowed to pass to those below. The same difficulty existed, but not to the same extent, after the defendant commenced diverting water from Hemlock lake as aforesaid. At the same time the said board of water commissioners erected the bulk-head and gates of the outlet of Hemlock lake, they also deepened the outlet of Canadice lake at the lake, and erected therein a bulk-head and gates by means of which the waters of Canadice lake were retained while there was an abundance, and defendant was enabled to, *and did,* when the dry season came, discharge the water so retained in said lake into the outlet until the water in said lake was reduced to eight feet below the ordinary high-water mark therein, and that the supply thus furnished for the use of the mills and machinery of the plaintiffs on Honeoye creek was more uniform and greater than the usual and natural flow of water in said creek during the dry season. That such erections at the outlet of Canadice lake were so made by said commissioners expressly to supply to the plaintiffs during the dry season water for their mills and machinery in place of that taken from Hemlock lake through the said pipe for the use of the city. That the defendant has secured the control of the outlets of Canadice and Hemlock lakes to the place of their junction and has erected permanent structures by which it is enabled to and does purpose to furnish a more uniform and constant supply of water to plaintiffs' mills than existed before it commenced to draw water from the last

mentioned lake, and the plaintiffs have not suffered any damage by the interference of the defendant with the water of said lake."

The following opinion was delivered at Special Term :

RUMSEY, J. :

The decision of the Court of Appeals has established that the diversion of the waters of Hemlock lake by the defendant, in the manner and for the purposes shown by the findings, was a violation of the right of the plaintiffs as riparian owners. The case is presented now upon the same facts that appeared when it was considered by the Court of Appeals, with the addition of a concession that the defendant has taken steps by which it is enabled to and does, and purposes to furnish a more uniform and constant supply of water to plaintiffs' mills than existed before it commenced to draw water from Hemlock lake, and the plaintiffs have not suffered any damage by the interference of the defendant with the waters of said lake.

Upon these facts the plaintiffs move for judgment, and the defendant, in opposition, urges that, as its act has not damaged the plaintiffs, but rather has done them substantial good, they are not entitled to an injunction. The concession made in the case that the plaintiffs have not suffered any damage, is to be understood as meaning that the violation of their right has not inflicted upon them any loss for which a jury in an action at law would give them a pecuniary recompense. Such is the usual and ordinary meaning of the word damage, and such, I think, is the fair interpretation of the concession. The case stands, then, upon the proposition that the defendant, under a claim of legal authority so to do, is violating a right of the plaintiffs as riparian owners, but that this violation of their right does not inflict upon them any pecuniary loss. The question is, whether, upon that state of facts, the plaintiffs are entitled to an injunction restraining the violation of their right. The waters of Hemlock lake, which have been diverted by the defendant, flow into the Honeoye creek, and in times of drouth, add considerably to the volume of water flowing by the plaintiffs' mills. To this flow, in its usual volume, the plaintiffs have a right. Their right is to the flow, not only in its accustomed channel, but from its natural source. (Angell on Water Courses, chap. 4, 108 q.) Any artificial

supply may be cut off by the persons who furnish it, but the course
of the stream, from its head to the land of the plaintiffs, cannot be
changed without their consent. For this reason I dismiss as unim-
portant the fact that the defendant supplies to the stream from
Canadice lake an amount of water equal to that which it diverts
from Hemlock lake. Upon that subject I adopt the words of the
justice before whom this case was first tried. " The defend-
ant is not at liberty to say ' true, I abstract from the creek a
large portion of its ordinary flow, but I furnish you other-
wise as full supply and more equable flow than the natural
stream supplies.' It cannot change the absolute rights of
the plaintiffs without their assent, and defend the act upon the
ground that it furnishes a fair equivalent." (*People* v. *Vanderbilt*,
26 N. Y., 297; *Crooker* v. *Bragg*, 10 Wend., 260; *Harding* v. *Stam-
ford Water Co.*, 41 Conn., 87.) But throwing out that fact (which
is stated probably as a reason why there is no loss to plaintiffs' from
the violation of their right), and the question is still presented,
whether a violation of a right not accompanied by damage is suf-
ficient to sustain an injunction. The question has been mooted
many times in the courts of this country and in England, and the
authorities upon it are numerous. In actions at law it seems to be
undisputed that whenever an injury is done to a right, actual
damage is not indispensable as the foundation of an action. (*Embrey*
v. *Owen*, 6 Exch., 352; *Parker* v. *Griswold*, 17 Conn., 288;
*Blanchard* v. *Baker*, 8 Greenl., 253; *Lund* v. *New Bedford*, 121
Mass., 286.) The leading case in equity in this country is *Webb* v.
*Portland Manufacturing Company* (3 Sumn., 189), decided by
Judge STORY, sitting in the Circuit Court of the United States in
Maine. The question presented was, as stated by the court, whether
to maintain an action to prevent the diversion of a water-course it
is essential for the plaintiff to establish any actual damage. The
conclusion reached was, that where the act done was such that by
its repetition or continuance it may become the foundation or evi-
dence of an adverse right, the case was a proper one for equity to
interpose by way of injunction. This case has been cited with
approval many times both in the United States and in England.
The Supreme Court of Massachusetts regard it as settling the law
that when a person is asserting a right, which at the time does no

damage, but which may operate by long continuance to destroy or
diminish the right of the plaintiff, even if that right is not then
exercised by the plaintiff and there is no present intention of exer-
cising it, he will be restrained by injunction. (*Brockline* v. *Mack-
intosh*, 133 Mass., 215, 224.) The same principle is established in
England in actions of this class in several cases. (*Crossley* v. *Light-
owler*, L. R., 3 Eq., 279, 298 ; Same Case, L. R., 2 Ch. App., 478.) In
the recent case of *Wilts and Berks Canal Navigation Company*. v.
*Swindon W. Company* (L. R., 9 Ch. App., 451), the question was
squarely presented. The suit was brought to restrain a diversion of the
water which supplied plaintiffs' canal for the purpose of supplying the
defendants' works. The vice chancellor dismissed the bill because
in his opinion the plaintiffs had not the right they claimed, and even
if they had it, the abstraction of water by the defendants was not
of such an amount as would justify the complaint. Upon appeal the
decree of the vice chancellor was reversed ; the lords justices agree-
ing that the plaintiffs had established their right, and that as the
defendants had invaded it under claim of an adverse right, the
plaintiffs were entitled to restrain such invasion without having suf-
ered any actual damages (pp. 459, 461). The decree of the lords
justices was affirmed by the house of lords. (L. R., 7 H. L., 697.)
The case of *Webb* v. *Portland Manufacturing Company*, was cited
and approved by the General Term in *Corning* v. *Troy Iron and
Nail Factory* (39 Barb., 311, 317). Indeed, I think, that upon a care-
ful examination, the case last cited must be regarded as establishing
the same rule. It appears by the findings of fact in that case that
the defendants, under claim of right, had diverted a quantity of
water from the stream running through plaintiffs' land. The
quantity diverted was sufficient to run one run of stone, but the
plaintiffs had never used or attempted to use the water, and there
was no finding that the plaintiffs had suffered any damage from the
diversion. But the court, both at General Term and in the Court of
Appeals, held that where there was a clear violation of the right, the
plaintiffs could recover without proof of actual damage. (39 Barb.,
327 ; S. C., 40 N. Y., 204, 207.) It is true that Judge WOODRUFF
says, on page 220, that if it was clear that the restoration of the
water was of no value to the plaintiffs the case would not call for
equitable interference. But it is quite evident that he did not

mean by that expression to be understood as saying that the plaintiffs must show actual damage already suffered to entitle them to their injunction, because he says that, although they have not used the water, they can make it available, and as their right is established they should have the relief. The defendant cites several cases in which it was held that a court of equity will not interfere by way of mandatory injunction except in cases in which serious damage would be suffered by such interference being withheld. In *Wood* v. *Sutcliffe* (2 Sim. Ch. [N. S.], 163) the facts were that the right of the plaintiffs was admitted by defendant, and the vice-chancellor denying the injunction put his decision upon the ground that the plaintiffs were guilty of laches, and that the case showed that the injury was capable of being compensated by money. (Pp. 169, 170.) It is evident that he did not intend to hold that where a right was invaded equity would not interfere because the damages were trifling, because he had emphatically repudiated that proposition in the case of *Rochdale Canal Company* v. *King* (2 Sim. Ch. [N. S.], 78, 85). In *Durell* v. *Pritchard* (L. R., 1 Ch. App., 244) there was no invasion of the right, and the real injury was only temporary and could not ripen into an adverse right. The lords justices in that case refuse to follow *Deere* v. *Guest* (1 Myl. & Cr., 516) saying that it does not support the rule that a mandatory injunction will not be granted where the damage was completed before the bill was filed. In *Jacomb* v. *Knight* (3 DeG., J. & S., 533), no right could be acquired against the plaintiff and he could obtain adequate compensation at law.

I have not had access to the other cases cited by the defendant.

I have examined many other cases on this subject but I have found none to impugn the rule as laid down by Judge STORY in *Webb* v. *Portland Manufacturing Company* (1 High on Inj., § 873).

The objection that the injury to the defendant will be immeasurable and irreparable and will injuriously affect great public interests, if this injunction is granted, is answered by the Master of the Rolls in *Goldsmid* v. *Commissioners* (L. R., 1 Eq., 160, 169) and by GROVER, J., in *Corning* v. *Troy Iron and Nail Factory* (*supra*, at page 205). As the defendants have the power to acquire the right to divert this water, the judgment to be entered may provide that the injunction shall not be operative until they have had an opportunity

to do so.  I think, upon the examination of authorities, the true rule to govern cases like this is formulated in Angell on Watercourses (sec. 449), and that it requires the court to grant the injunction prayed for in this action.

*William F. Cogswell,* for the appellant.

*Theodore Bacon,* for the respondent.

The decision below was affirmed on the foregoing opinion of RUMSEY, J., the following dissenting opinion being delivered at General Term, by

HAIGHT, J. (dissenting):

It appears from the stipulated facts that the plaintiffs have suffered no damage by reason of the diversion of the water by the defendant; but, on the contrary, they have been furnished with a more constant and uniform supply of water than they had before had, and that the defendant purposes in the future to continue to furnish them a more constant and uniform supply of water for their mills than existed before it commenced to draw water from Hemlock lake.   The question is thus sharply presented as to whether this action can be maintained, when the plaintiffs have suffered no damage, and none is expected to result in the future, from the use of the water made by the defendant.   This case has been once considered by the Court of Appeals and a new trial was granted, it then being held, among other things, that the evidence upon the former trial tended to show that plaintiffs were injured by the diversion of water complained of.   (*Smith* v. *City of Rochester,* 92 N. Y., 463.)

The case of *Webb* v. *Portland Manufacturing Company* (3 Sumn., 189) is the authority chiefly relied upon by the respondents and the court below, to support the judgment.   The opinion was written by Justice STORY, and because of his great learning and eminence as a judge, I have hesitated about questioning the rule as laid down by him.   In view of the fact that the result reached by him is not in accord with what I have supposed to be the law, I have examined to some extent the authorities upon which he relies. In that case the plaintiff and defendants were owners of different mills in severalty on the same mill-dam.   The defendant opened a

canal into the pond at some distance above the dam, and supplied his mill with water through the canal. It was held that the defendant was not entitled to his proportion of the water until it arrived at the dam, and that although the plaintiff had suffered no damage, he was entitled to maintain the action.

In the case of *Young* v. *Spencer* (10 Barn. & Cres., 145), relied upon by STORY, J., the action was brought by the owner of a house against his lessee, for cutting an opening in the building for a new door, whereby it was claimed that the house was weakened and injured. The jury found that the lessee did cut the opening without leave, but that the house was not in any respect weakened or injured. The judge thereupon directed a verdict to be entered for the plaintiff for nominal damages. So that this case would appear to be in conflict, rather than a support to the proposition contended for. In the case of *Marzetti* v. *Williams* (1 B. & Adol., 415), the action was to recover damages against a banker for refusing payment of a check drawn by a customer after he had received sufficient funds to pay the check. The check was not paid until the next day after the demand. It was held that the plaintiff was entitled to recover nominal damages, and the authorities relied upon were to the effect that where a wrong is done, by which the right of the party may be injured, there is a good cause of action, although no actual damage be sustained. It will be observed that here is an important distinction made which is, that a wrong is done by which the right of a party *may be injured*. With this distinction in mind there is not much difficulty in harmonizing the numerous cases appearing in the books. A landlord has the right to visit the premises occupied by his lessee for the purpose of inspecting and preserving and seeing whether waste has been committed, by depriving him of this right he *may be injured*. An elector has the right to have his vote taken and counted at an election, by refusing him this right he *may suffer injury*. With this qualification I have no further question in reference to the rule as declared by Justice STORY. In the case of *Wilts and Berks Canal Navigation Company* v. *Swindon Water-Works Company* (9 Chan. App. Cases, 451), the plaintiff, a canal company, had the right to supply their canal with water from the neighboring stream. The defendant, the Water-Works Company,

diverted a part of the stream and thereby supplied with water the neighboring town. It appeared on the trial that during a severe drought the canal was so insufficiently supplied with water that traffic upon it was stopped for several weeks. An injunction was granted to restrain the defendant from diverting the water " *so as to interfere with the supply of water required by the plaintiffs for the navigation of the canal.*" In other words, the defendants were enjoined from diverting the water to the damage of the plaintiffs. In the case of *Kensit* v. *The Great Eastern Railway Company* (27 Chan. Div. Cases, 122), the defendant owned land upon which their railway was built which crossed the stream over a culvert. One Robert Free had land adjoining that of the railroad company, but not abutting on the stream. Under a license from the railway company he put a pipe through the land of the company to his own premises by means of which he pumped water from the stream to his factory, used it for cooling and condensing purposes and then returned it to the stream through another pipe, discharging it in the stream six feet below the place where it was taken from the stream. The plaintiff was an abutting owner of land upon the stream, below the railway's lands. He brought action to restrain the defendant from so using the water. It was held that although the defendant had no right to grant the use of the water to Free, still, inasmuch as the plaintiff suffered no damage, the action could not be maintained and the bill was dismissed, thus affirming the same case in 23 Chancery Div., 566. In the case of *Earl of Sandwich* v. *Great Northern Railway Company* (10 Chan. Div., 707), the defendant, a railroad company, whose land crossed a stream in the immediate neighborhood of one of their stations, took water from the stream for the purpose of supplying their engines and for the general purposes of the station. The defendant, a mill owner, lower down the stream, brought suit for an injunction to restrain the defendant from diverting the water. It was held that the company as riparian owners were entitled to take a reasonable quantity of water for their purposes, that the quantity taken was reasonable, did not reduce the depth of the water flowing in the stream one-fifth of an inch and did not cause the defendant any perceptible damage. BACON, V. C., in his opinion, says : "Is that a case in which, if there is nothing else in it, the

plaintiff could ask in this court for an injunction? What injunction is he entitled to? Is there any damage done him? It is not pretended that there is any damage done to him. * * * The evidence which I have before referred to satisfies me that the plaintiff's complaint is wholly unreasonable, and that the defendants have done nothing which the law does not entitle them to." The complaint was dismissed with costs. In the case of *Elliot* v. *The Fitchburg Railroad Company* (10 Cush., 191) it was held that one riparian proprietor cannot maintain an action against an upper proprietor, for the diversion of part of the water of a natural water-course flowing through their lands, unless such diversion causes the plaintiff actual perceptible damage. The opinion in this case was written by Chief Justice SHAW, in which he says: "The plaintiff contended that, if the jury were satisfied of the existence of the brook as alleged, and the diversion of the water therefrom by the defendants, he was entitled to a verdict for nominal damages, without proof of actual damage. But the presiding judge instructed the jury that, unless the plaintiff suffered actual perceptible damage in consequence of the diversion of the defendant, the defendants were not liable in this action." In connection with this instruction, the judge further instructed the jury, that " if they believed that the defendants, by excavating said reservoir and spring above the dam, or that said Clark, by digging said ditches, had increased the flow of water of said brook equal to the quantity of water the defendants had diverted therefrom, then the defendants are not liable in this action. The whole court are of the opinion that this direction was right in both particulars." The case of *Garwood* v. *The New York Central and Hudson River Railroad Company* (83 N. Y., 400), the plaintiff, a mill owner on Tonawanda creek, brought an action against the defendant to restrain it from diverting the waters of the stream, at its station in Batavia, for the purpose of supplying its locomotive engines with water, etc. Issues were formed, and the controverted questions of fact were tried before a jury. The jury found that the defendant had so diverted the water of the creek as to perceptibly reduce the volume of water flowing therein, and to materially reduce or diminish the grinding power of the plaintiff's mill. It was held, in consequence thereof, that he had sustained damages to a substantial

amount, and that an injunction should issue, restraining the defendant from diverting the water "*to the injury of the plaintiff.*" DANFORTH, J., in writing the opinion of the court, quotes approvingly from the cases of *Elliott* v. *The Fitchburg Railroad Company* and the *Earl of Sandwich* v. *The Great Northern Railroad Company* (*supra*).

It thus appears to me that the rule is that as to upper and lower riparian owners, each has a right to the ordinary use of water flowing past his land, for domestic purposes, without regard to the effect that it may have upon the lower owner. That it may also be used for other purposes, if not to the injury or damage of the lower riparian owner. That in order to entitle the lower riparian owner to maintain an action for an injunction, he must show either that he has been damaged by the improper diversion of the water or that there is reason to apprehend that he may be injured by such diversion. The city of Buffalo pumps water for its use and that of its inhabitants from the Niagara river. There are mill owners below at Black Rock, Tonawanda and Niagara Falls. A vast body of water constantly passes through the river, forming a swift current, furnishing an ample supply for all of the lower mill owners, so that no possible damage can ever result to them in consequence of the water pumped out of the river by the city. To give mill owners the right to maintain an action for an injunction, under such circumstances, would be unreasonable and unjust. The illustration serves to make clear the wisdom of the rule which I contend is established by the cases cited.

As to the case under consideration, it appears that the city of Rochester, by act of the legislature, was authorized to acquire, by purchase or by appraisal under the right of eminent domain, title to any lands it may require for the purpose of procuring water from Hemlock lake. It appears from the twentieth finding of fact that the defendant has secured the control of the outlet of Canadice and Hemlock lakes to the place of their junction, and has erected permanent structures, etc. It thus appears that the defendant has the possession and control of these outlets, and is, therefore, a riparian owner. It thus has a right to use the water passing through these outlets, but not, however, to the damage of the plaintiffs, who are lower riparian owners.

Again, it is argued that if the use by the defendant of the water of Hemlock lake is permitted to continue, such use may grow into a right by prescription. This right can be obtained only by continuing the use in the same manner for a period of twenty years. If, at any time, the use by the defendant of the water is increased so as to cause damage to the plaintiffs, the twenty years would only commence to run from the time of such increased use, and the plaintiffs would then have the right to maintain their action. (*Kensit* v. *The Great Eastern Railway Company*, 27 Chy. Div. Cases, 122–129.)

Judgment should be reversed and a new trial ordered, with costs to abide the event.

SMITH, P. J., BARKER and BRADLEY, JJ., for affirmance on opinion of RUMSEY, J., at Special Term.

Judgment affirmed, with costs, on the opinion of RUMSEY, J., at Special Term.